IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Rick Ross and Ashlee Ross,

        Plaintiffs,

v.

Mike Music, *et al.*,

        Defendants.

Case No. 2:13-cv-249

Judge Graham

Opinion and Order

Plaintiffs Rick Ross and Ashlee Ross bring this action *pro se* alleging that various local government officials in Jackson County, Ohio violated their constitutional rights in connection with the search of a house for evidence of a marijuana growing operation. This matter is before the court on the defendants' motions to dismiss. The defendants include law enforcement agents with the Jackson County Sheriff's Department and the City of Jackson Police Department, as well as the Jackson County Prosecutor and a probation officer for the Jackson County Municipal Court.

For the reasons stated below, the motions to dismiss are granted.

**I.     Background**

The complaint alleges that on February 18, 2011, Rick Ross was present at a house located at 11 East C Street, Wellston, Ohio. Many other individuals were also present, including Betty Jane Ghearing (owner of the house), Joshua Ross (a resident of the house and son of Rick Ross), and plaintiff Ashlee Ross (a resident of the house and daughter of Rick Ross).

The complaint alleges that defendant Mike Music, an officer with the City of Jackson Police Department, received an anonymous tip that there was a marijuana growing operation in the basement of the house located at 11 East C Street. According to documents attached to the complaint, which include police reports and a search warrant, several known residents of the house were on probation. Defendant Keith Copas, a deputy with the Jackson County Sheriff's Department, visited the house at about 2:00 pm on February 18, 2011. Numerous people were at the house and Copas observed marijuana and related paraphernalia in plain sight and smell. At that point, Copas sought a search warrant, which issued at 2:30 p.m. The warrant authorized a search of the house for marijuana-related items and a search of persons and vehicles found on the premises.

The complaint alleges that Music organized a task force that included defendants Ray Vannatter, a probation officer, and James Ephlin, a deputy with the Jackson County Sheriff's Department, to execute the search warrant on February 18, 2011. Rick Ross and Joshua Ross were arrested at the scene for cultivation of marijuana. Copas allegedly placed Rick Ross in his cruiser and transported him to the Jackson County Correctional Facility, where Rick Ross was separated from Joshua Ross and placed in a holding cell. The complaint alleges that a billfold belonging to Rick Ross was seized. The billfold held his driver's license, Social Security card, and cash. Rick Ross was then interrogated by Music and Ephlin, as well as by non-defendant law enforcement officials.

Defendant Jack Detty, Jackson County Prosecutor, brought a charge against Rick Ross for cultivation of marijuana. The complaint alleges that Rick Ross was unable to make bond and was incarcerated until a jury found him not guilty of the marijuana cultivation charge on June 9, 2011.

The complaint alleges that Joshua Ross confessed to Music and Ephlin on February 18, 2011 that the marijuana growing operation was his, though Rick Ross was not informed of the confession. The complaint further alleges that Detty, Music, and Ephlin later got Joshua Ross to agree make a statement against Rick Ross by promising to drop a heroin charge against him. The complaint also alleges that Music and Ephlin coerced Ashlee Ross to make a statement against Rick Ross by putting her "in and out of jail."

The complaint further alleges that on February 24, 2011, Music, Ephlin and defendant Tom Masters, an officer of the City of Jackson Police Department, served a search warrant on Cindy Townsend, the mother of Joshua Ross, at 11 East C Street to search for items related to illegal substances, including heroin. They seized a 2008 Nissan Altima that was titled to Ashlee Ross after finding a marijuana-growing light system in the trunk of the car.

According to the complaint, on March 6, 2011 Cindy Townsend was driving a 2000 GMC Jimmy, which was titled to Ashlee Ross, and was stopped in Wellston, Ohio by Ephlin and Copas for driving with a suspended license. Inside the vehicle was a large collection of sports memorabilia, allegedly worth between $35,000 and $50,000, belonging to Rick Ross. The vehicle and sports collection were seized.

The complaint alleges that Rick Ross, through legal counsel, petitioned for the return of seized items in August 2011. His petition was granted by court order, but the complaint alleges that defendants have not complied with the order and have failed to return his personal property. Named as defendants in connection with the alleged refusal to return the seized items are Jackson County Sheriff John Shasteen and City of Jackson Chief of Police Carl Eisnaugle.

Plaintiffs allege that defendants engaged in wrongdoing in multiple ways. They allege that the warrant to search the house on February 18, 2011 was based only upon an anonymous tip to Music and was not supported by probable cause. Rick Ross alleges that his arrest and imprisonment were unlawful because defendants lacked probable cause to believe he was involved in the marijuana growing operation – he was not an owner or resident of the house and defendants allegedly found no evidence during their search that would suggest that he had participated in cultivating marijuana. Rick Ross further alleges that his son's confession should have been disclosed to him and that he was maliciously prosecuted because the confession should have cleared him of wrongdoing. He also alleges that defendants fabricated evidence by improperly coercing his son and daughter to make statements against him. Plaintiffs allege that the seizures of the vehicles, sports memorabilia collection, and Rick Ross's billfold were not lawfully made pursuant to a search warrant, but rather were made so that there would be no assets available to liquidate and obtain Rick Ross's release on bond. As a result of this alleged wrongdoing, Rick Ross claims that he was improperly incarcerated from February 18, 2011 until June 9, 2011. Finally, plaintiffs allege that defendants have unlawfully refused to return the seized items.

The complaint asserts claims against defendants in their official capacities for violations under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. The complaint also asserts violations of Article 1, Sections 10 and 14 of the Ohio Constitution. Plaintiffs seek relief in the form of compensatory and punitive damages.

This action was originally filed in the Court of Common Pleas for Jackson County, Ohio. Defendants removed the matter to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331.

## II. Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Iqbal, 556 U.S. at 679; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); Papasan v. Allain, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Twombly, 550 U.S. at 556 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Iqbal, 556 U.S. at 678-79; Twombly, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. Discussion

#### A. Claims of Ashlee Ross

Defendants move to dismiss the claims of Ashlee Ross on the grounds that she did not sign the complaint. Both the federal and state rules of procedure require a *pro se* plaintiff to personally sign her name on the complaint. See Fed. R. Civ. P. 11(a); Ohio R. Civ. P. 11. And under both sets of rules, the failure to sign is cause for the pleading to be stricken "unless the omission is promptly corrected after being called to the attorney's or party's attention." Fed. R. Civ. P. 11(a); see also Ohio R. Civ. P. 11.

Ashlee Ross did not sign the complaint, nor has she corrected the omission since it was called to her attention by the motions to dismiss filed in March 2013. Accordingly, her claims, which largely concern the seizure of her motor vehicles, are dismissed.

### B. Section 1983 Claims

Though the complaint does not reference 42 U.S.C. § 1983, the court will construe the complaint as asserting claims under § 1983. See Warthman v. Genoa Township Bd. of Trustees, 549 F.3d 1055, 1062-63 (6th Cir. 2008) (noting the discretion that district courts have to construe direct constitutional claims against local officials (against whom such claims are not recognized) brought by *pro se* litigants as § 1983 claims).

#### 1. Statute of Limitations

The complaint was filed in state court on February 19, 2013. Defendants argue that the applicable two-year statute of limitations bars any claims based on the events that allegedly occurred on February 18, 2011. See Trzebuckowski v. City of Cleveland, 319 F.3d 853, 855-56 (6th Cir. 2003) ("Actions brought pursuant to 42 U.S.C. § 1983 apply the statute of limitations from a state's general personal injury statute. . . . [A] two-year statute of limitations, O.R.C. § 2305.10, applies to actions brought under 42 U.S.C. § 1983 in Ohio).

Rick Ross responds with the factually correct observation that February 18, 2013 was a legal holiday (the observance of Washington's Birthday, or President's Day). He is also correct that under the applicable rule, Rule 6(A) of the Ohio Rules of Civil Procedure, he had one additional day for filing his complaint because the last day of the limitations period fell on a legal holiday. See also Fed. R. Civ. P. 6(a). The complaint was thus timely filed.

#### 2. Official Capacity Suit

Defendants argue that the claims against them should be treated as official capacity claims, and the court agrees. The complaint does not use the term "official capacity," but it does name each defendant as liable "in their capacity" as a local official. For instance, Ephlin is named as a defendant "in their [*sic*] capacity [as] Chief Deputy Jackson County Sheriff's Department," and Detty is named as a defendant "in their [*sic*] capacity [as] Jackson County prosecutor." The same is true for all named defendants. In response to the motions to dismiss, plaintiffs agree with the characterization that defendants have been named in their official capacities. See Doc. 8 at ¶¶ 3, 5 (stating that defendants have all been named "as being in their capacity of law enforcement"). Given this concession and the general rule that a plaintiff must provide sufficient notice of an

5

individual capacity claim, see Moore v. City of Harriman, 272 F.3d 769, 773 (6th Cir. 2001), the court finds that the claims are against defendants in only their official capacities.

### 3.     Alleged Constitutional Deprivations

"[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." Alkire v. Irving, 330 F.3d 802, 810 (6th Cir. 2003) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). An official capacity suit is "another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978).

To state a claim against a municipality under § 1983 for monetary relief, a plaintiff must show (1) a deprivation of his constitutional or federal rights (2) that occurred pursuant to a custom, usage, or official policy of the municipality. Monell, 436 U.S. at 690-91. Here, Rick Ross alleges that defendants have deprived him of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments. As discussed below, the court finds that the complaint sufficiently alleges a constitutional deprivation in relation to false arrest/imprisonment and to unreasonable seizure of the sports memorabilia, but the complaint fails to sufficiently allege other deprivations.

#### a.     Fourth Amendment – Search of the House

Rick Ross alleges that defendants lacked probable cause to search the house at 11 East C Street because it was an anonymous tip that ultimately led to the search. See United States v. Campbell, 256 F.3d 381, 388 (6th Cir. 2001) (noting that a search warrant based solely on an anonymous tip lacks probable cause). However, the search warrant here was not issued based solely on the anonymous tip. As documents relating to the search warrant (and attached to the complaint) show, Copas visited the house prior to seeking a search warrant and he smelled marijuana and observed drug paraphernalia in plain sight. Because the anonymous tip was corroborated by the observations made by Copas, there was probable cause to issue the warrant and the complaint thus fails to allege a constitutional deprivation in this regard. See Illinois v. Gates, 462 U.S. 213, 238 (1983) (probable cause is "a fair probability that contraband or evidence of a crime will be found in a particular place"); United States v. Elkins, 300 F.3d 638, 659-60 (6th Cir. 2002) (anonymous tip plus smell of marijuana provided probable cause for search warrant); United States v. Yarbrough, 272 Fed. App'x 438, 442-43 (6th Cir. 2007) (reviewing case law concerning anonymous tips of marijuana and holding that probable cause exists for a search warrant where anonymous tip was coupled with presence of marijuana in plain sight and the odor of marijuana).

### b. Fourth Amendment – Arrest/Imprisonment of Ross

Ross next alleges that he was falsely arrested and imprisoned because he was not an owner or resident of the house where the marijuana was grown. The court will construe this argument as alleging that Ross's mere presence at the house did not provide probable cause for his arrest and imprisonment.[1]

"[A]ny arrest without probable cause violates the Fourth Amendment." Crockett v. Cumberland Coll., 316 F.3d 571, 580 (6th Cir. 2003). For probable cause to arrest to exist, the "facts and circumstances within the officer's knowledge" must be "sufficient to warrant a prudent person ... in believing ... that the suspect has committed, is committing or is about to commit an offense." Crockett, 316 F.3d at 580 (internal quotation marks omitted). The facts and circumstances examined are limited to those "within an officer's knowledge at the time of an arrest." Id. (internal quotation marks omitted).

The court finds that the complaint sufficiently alleges a Fourth Amendment deprivation for arrest without probable cause. "[I]t is well-established that an individual's mere presence at a crime scene does not constitute probable cause for an arrest." Harris v. Bornhorst, 513 F.3d 503, 515 (6th Cir. 2008) (citing cases). Liberally construed, the complaint does not allege any other facts within the arresting officer's knowledge that would have been sufficient grounds for believing that Ross had committed, was committing, or was about to commit an offense. According to the complaint, Ross was not using or possessing marijuana or related paraphernalia at the time of Copas's initial visit or at the time of the search. The complaint alleges that the only items found on Ross during the search were his billfold and its contents (cash, driver's license, and Social Security card). Although the amount of cash found on Ross was substantial, $1120, the court must construe the complaint in a light favorable to plaintiff at this stage.

The complaint further alleges that Rick Ross was falsely imprisoned because defendants lacked probable cause to believe that he had committed a crime, particularly once Joshua Ross confessed to Music and Ephlin shortly after his arrest that the marijuana operation "was in fact his." Compl., ¶ 6. The court finds that the complaint sufficiently alleges a Fourth Amendment deprivation for false imprisonment. Again, the complaint alleges that the arrest of Rick Ross was not supported by probable cause, and probable cause would have been even more lacking if, as a

---

[1] "False arrest and false imprisonment overlap; the former is a species of the latter." Wallace v. Kato, 549 U.S. 384, 388 (2007). False imprisonment consists of detention without legal process, and a false arrest/imprisonment thus ends when an arrestee becomes held pursuant to such process— "when, for example, he is bound over by a magistrate or arraigned on charges." Id. at 389.

liberal reading of the complaint suggests, Joshua Ross quickly confessed to the marijuana operation being his alone.

### c.    Fourth Amendment – Seizure of Sports Memorabilia

The complaint alleges that on March 6, 2011 Copas and Ephlin stopped a vehicle belonging to Ashlee Ross and seized sports memorabilia found inside belonging to Rick Ross. The purported reason for the stop was that the driver, Cindy Townsend, was driving with a suspended license. The complaint alleges Copas and Ephlin had been monitoring Rick Ross's calls from jail and knew that Ross had directed that his sports memorabilia be sold and the proceeds be applied to obtain his release on bond. According to the complaint, the real reason for the stop was to seize the memorabilia and prevent Ross from making bail.

The Fourth Amendment prohibits unreasonable seizures. A "seizure" of property "occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" Soldal v. Cook County, Ill., 506 U.S. 56, 61 (1992) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)). The complaint plainly alleges that defendants seized the sports memorabilia. The complaint further alleges that the seizure was unreasonable because it was not supported by probable cause or reasonable suspicion or exigent circumstances, in that Townsend was not in fact driving the vehicle, the memorabilia was not evidence of any crime, and the stop was a ploy to keep Ross from making bail. See generally Kentucky v. King, __ U.S. __, 131 S.Ct. 1849, 1856-57 (2011) (reviewing case law concerning reasonableness standard of Fourth Amendment). The complaint thus sufficiently alleges a Fourth Amendment deprivation for an unreasonable seizure.

### d.    Fourth Amendment – Malicious Prosecution

The complaint asserts a claim for malicious prosecution relating to prosecutor Detty's decision to bring a charge for marijuana cultivation against Rick Ross despite evidence to the contrary, namely his son's confession. See Compl., ¶ 12 (alleging that "the prosecutor . . . chose to ignore the fact that directly in front of [him] was a confession").

In order to state a malicious prosecution claim under § 1983, a plaintiff must demonstrate that (1) the defendant participated in the decision to prosecute the plaintiff, (2) probable cause did not support the institution of legal process, (3) the plaintiff suffered a Fourth Amendment deprivation of liberty in addition to the initial seizure as a result of the institution of proceedings, and (4) the legal proceedings resulted in the plaintiff's favor. Sykes v. Anderson, 625 F.3d 294, 308 (6th Cir. 2010).

The claim for malicious prosecution fails on the second element because a grand jury indicted Ross for cultivation of marijuana. See State of Ohio v. Ross, 11-cr-0033 (Jackson County Ct. C.P.); see also Winget v. JP Morgan Chase Bank, N.A., 537 F.3d 565, 576 (6th Cir. 2008) (judicial notice of court records may be taken to confirm the fact of filing). "A grand jury indictment conclusively demonstrates the existence of probable cause for purposes of a § 1983 malicious prosecution claim." LeFever v. Ferguson, Nos. 2:11-cv-935, 2:12-cv-664, 2013 WL 3456758, at *16 (S.D. Ohio July 9, 2013) (citing Barnes v. Wright, 449 F.3d 709, 716 (6th Cir. 2006); Higgason v. Stephens, 288 F.3d 868, 877 (6th Cir.2002)). "Absent evidence of perjured testimony or irregularity in the grand jury proceeding so as to indicate that the indictment was somehow tainted, there is a conclusive presumption that probable cause supported the prosecution." Id. (citing Bakos v. City of Olmstead Falls, 73 Fed. App'x 152, 157 (6th Cir. 2003). While the complaint alleges that one of the officers perjured himself at trial, the complaint contains no allegations of an irregularity in the actual grand jury proceeding so as to undermine the presumption of probable cause arising from an indictment. The complaint thus does not sufficiently allege a Fourth Amendment deprivation for malicious prosecution.

      **e.     Fifth and Fourteenth Amendment – Exculpatory Evidence**

The complaint alleges that Rick Ross's right to due process was violated because the prosecutor hid Joshua Ross's confession. A prosecutor has a duty to disclose exculpatory evidence to the defendant. See generally Brady v. Maryland, 373 U.S. 83 (1963). However, the complaint concedes that the prosecutor did in fact disclose the confession to Rick Ross's attorney several weeks before trial. Compl., ¶ 8. This pretrial disclosure of the confession was sufficient to avoid a constitutional deprivation. See United States v. Robinson, 272 Fed. App'x 421, 435 (6th Cir. 2007) (citing United States v. Crayton, 357 F.3d 560, 569 (6th Cir. 2004); United States v. Mullins, 22 F.3d 1365, 1371 (6th Cir. 1994)).

      **f.     Fifth and Fourteenth Amendment – Fabrication of Evidence**

The complaint next alleges that defendants falsified evidence. There are two aspects to this claim: (1) the allegation that Music perjured himself when testifying at trial about his surveillance of the residence at 11 East C Street; and (2) the allegation that Ashlee Ross and Joshua Ross were coerced to make false statements against Rick Ross. An individual's due process rights are violated "when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." Gregory v. City of Louisville, 444 F.3d 725, 737 (6th Cir. 2006) (citing Stemler v. City of Florence, 126 F.3d 856, 872 (6th Cir. 1997)).

With respect to the alleged perjury, the complaint contains only the scant allegation that Music testified that he saw Rick Ross during surveillance driving a red Nissan Altima but that a written surveillance log showed that he was driving a silver GMC Jimmy. There is no allegation that Music knowingly made a false statement, nor does the complaint contain allegations that would support an inference that Music's testimony had a reasonable likelihood of affecting the decision of the jury.

Turning to the allegedly coerced statements, the complaint fails to allege a due process deprivation because it does not support an inference that statements were made or introduced at trial, and thus a reasonable likelihood did not exist that they would affect the decision of the jury. According to the complaint, Music and Ephlin coerced Ashlee Ross to make a statement against Rick Ross by putting her "in and out of jail." The complaint alleges that Detty, Music, and Ephlin coerced Joshua Ross to make a statement from jail against Rick Ross by promising to drop a heroin charge against him. The complaint therefore makes clear that these statements were not made at trial. See Compl., ¶ 10.[2] Moreover, the complaint does not allege that the statements were introduced as evidence at trial or that Ashlee Ross or Joshua Ross appeared at trial and gave false testimony.

### g. Fifth and Fourteenth Amendment – Retention of Property

Ross alleges that his right to due process has been violated by defendants' retention of his sports memorabilia and the contents of his billfold. The complaint also states, however, that Ross petitioned the state court for an order directing the return of these items and that the court granted his petition. "If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury." Jefferson v. Jefferson County Pub. Sch. Sys., 360 F.3d 583, 587–88 (6th Cir. 2004). Though Ross alleges that defendants have not yet complied with the state court order, he has not alleged any facts to support an inference that he does not have an adequate remedy by seeking further redress from the state court. See id. (plaintiff must show "the inadequacy of state remedies as an element of [his] constitutional tort.").

### h. Sixth Amendment

The opening paragraph of the complaint alleges a Sixth Amendment violation, but the complaint is devoid of factual allegations that would support an inference that Ross was deprived of any Sixth Amendment right.

---

[2] Rick Ross confirmed in a later filing that the statements were made from jail. See Doc. 8, p. 4.

### i. Summary

The court finds that the complaint fails to adequately allege a constitutional deprivation with respect to: the search of the house (Fourth Amendment), malicious prosecution (Fourth Amendment), non-disclosure of exculpatory evidence (due process), fabrication of evidence (due process), retention of property (due process), or any right enumerated in the Sixth Amendment. Accordingly, Rick Ross's § 1983 claims relating to these alleged deprivations are dismissed.

The court finds that the complaint adequately alleges a Fourth Amendment deprivation with respect to false arrest/imprisonment and unreasonable seizure of sports memorabilia. The court will next examine whether Ross has alleged a policy or custom with regard to these deprivations.

### 4. Policy or Custom

To state a claim against a municipality under § 1983 for monetary relief, a plaintiff must show not only a deprivation of his constitutional rights but also that the deprivation occurred pursuant to a custom, usage, or official policy of the municipality. Monell, 436 U.S. at 690-91. Section 1983 liability attaches to a municipality only when the execution of a "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," injures the plaintiff. Monell, 436 U.S. at 694. See also City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989) (a municipality may be "liable under § 1983 only where the municipality itself causes the constitutional violation at issue" in that its policies or customs are the "moving force [behind] the constitutional violation") (internal quotation marks omitted); Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986) (a municipality is liable only for acts that it "has officially sanctioned or ordered").

The policy or custom must originate from the "official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur, 475 U.S. at 483. Section 1983 liability does not lie against a municipality solely because it employed a tortfeasor or based upon a theory of respondeat superior or vicarious liability. Monell, 436 U.S. at 691.

### a. False Arrest/Imprisonment

Defendants correctly note that the complaint does not allege that Jackson County or the City of Jackson had any policy or custom under which individuals are arrested and imprisoned for merely being present at a house where a search warrant is being executed. Even so, municipal liability may lie "for a single decision by municipal policy makers" under appropriate circumstances. Pembaur, 475 U.S. at 483. A "policy" is "a deliberate choice to follow a course of action ... from among various alternatives." Id. "A single decision can constitute a policy, if that decision is made by an

official who 'possesses final authority to establish municipal policy with respect to the action ordered,' which means that his decisions are 'final and unreviewable and are not constrained by the official policies of superior officials.'" Flagg v. City of Detroit, 715 F.3d 165, 174-75 (6th Cir. 2013) (quoting Pembaur, 475 U.S. at 480–81, and Miller v. Calhoun Cnty., 408 F.3d 803, 814 (6th Cir. 2005)).

The court finds that the complaint fails to allege that Ross's arrest and imprisonment were the result of a decision that could be considered to constitute a policy of either Jackson County or the City of Jackson. The complaint does not allege who arrested Rick Ross, and none of the officers allegedly at the scene were final decisionmakers. Deputy Sheriff Copas allegedly took Ross to a local jail. Jackson County Sheriff John Shasteen and City of Jackson Chief of Police Carl Eisnaugle are not alleged to have directed, participated in, or approved of the arrest and imprisonment of Rick Ross. See Feliciano v. City of Cleveland, 988 F.2d 649, 656 (6th Cir. 1993) (decision by a subordinate does not constitute a policy unless ratified by a final policymaker; "mere acquiescence in a single discretionary decision by a subordinate is not sufficient to show ratification"). Even under a liberal reading of the complaint, the arrest was at most the result of subordinate officers who arrested Ross simply because he was present at a house where they found a marijuana growing operation. The complaint does not support a plausible inference that municipal policy or custom was "the moving force" behind the alleged constitutional deprivation. See Monell, 436 U.S. at 694.

Accordingly, Ross's claim for false arrest/imprisonment is dismissed.

### b. Unreasonable Seizure

The court similarly finds that the complaint fails to allege a policy or custom with respect to the alleged unreasonable seizure of sports memorabilia. According to the complaint, Deputies Copas and Ephlin listened to Ross's phone calls from jail, learned of Ross's intent to sell the sports memorabilia, stopped the vehicle in which the memorabilia was being transported, and unreasonably seized the memorabilia. The complaint, however, contains no allegations that a final decisionmaker directed the seizure or otherwise ratified the actions of Copas and Ephlin.

Accordingly, Ross's claim for unreasonable seizure is dismissed.

### C. Violations of the Ohio Constitution

The complaint asserts violations of Article 1, Sections 10 and 14 of the Ohio Constitution. Section 10 concerns a criminal defendant's rights at trial and Section 14 prohibits unreasonable searches and seizures. However, the Ohio Supreme Court has held that there is "no private constitutional remedy" under the Ohio Constitution where other adequate remedies are available.

Provens v. Stark Cnty. Bd. of Mental Retardation, 64 Ohio St.3d 252, 261, 594 N.E.2d 959, 966 (1992).  Courts have found that § 1983 provides an adequate remedy for the types of violations alleged here.  See Foos v. City of Delaware, No. 2:08-cv-873, 2010 WL 3489384, *10 (S.D. Ohio Aug. 31, 2010); Kies v. City of Lima, Ohio, No. 3:07-cv-1258, **2-3, 2007 WL 4287629 (N.D. Ohio Dec. 4, 2007); Wesaw v. City of Lancaster, No. 2:05-cv-320, 2005 WL 3448034, **4–5 (S.D. Ohio Dec. 15, 2005); Burr v. Barns, No. 2:04-cv-1119, 2005 WL 1969532, *10 (S.D. Ohio Aug. 12, 2005).

Accordingly, the claims for violations of the Ohio Constitution are dismissed.

### D. Common Law Claims

The complaint does not expressly assert any common law claims, but it can liberally construed to bring common law claims for false arrest, false imprisonment, and malicious prosecution.  As defendants correctly argue, these claims are barred by the applicable one-year statute of limitations.  O.R.C. § 2305.11(A); Mayes v. City of Columbus, 105 Ohio App.3d 728, 746, 664 N.E.2d 1340, 1352 (Ohio 1995).  The events at issue in the complaint took place from February to June 2011 but the complaint was not filed until February 2013.

Accordingly, the common law claims for false arrest, false imprisonment, and malicious prosecution are dismissed.

### IV. Conclusion

For the reasons stated above, the defendants' motions to dismiss (docs. 6 and 7) are GRANTED and this action is hereby dismissed.

    s/ James L. Graham  
    JAMES L. GRAHAM  
    United States District Judge

DATE: July 26, 2013